[Cite as *In re M.O.*, 2011-Ohio-2011.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF M.O.,  :  Case No. 10CA3189
                                                    :
ADJUDICATED ABUSED CHILD.  :
                                                    :  DECISION AND
                                                    :  JUDGMENT ENTRY
                                                    
**RELEASED 04/13/11**

_____

APPEARANCES:

David A. Sams, West Jefferson, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecutor, and Judith Heimerl Brown, Ross County Assistant Prosecutor, Chillicothe, Ohio, for appellee.

_____

Harsha, P.J.

{¶1}    A.R. ("Mother") appeals the juvenile court's decision awarding Ross County Job and Family Services, Children's Division (RCJFS) permanent custody of her daughter, M.O. (a.k.a. M.R.).  Mother contends that the agency failed to make "reasonable efforts" to place M.O. with a suitable relative, namely the child's great-aunt, before seeking permanent custody.  However, the agency had no statutory duty to make reasonable efforts to effect a relative placement before seeking permanent custody.  Nonetheless, the record supports a finding that the agency made such efforts.  And although the possibility of a relative placement may be relevant to the court's best interest analysis, the juvenile court did not have to find by clear and convincing evidence that no suitable relative was available for placement before awarding the agency permanent custody in this case.  Accordingly, we reject Mother's argument and affirm the juvenile court's judgment.

I.  Facts

{¶2}    RCJFS filed a complaint alleging that M.O., who was born two days earlier with opiates in her system, was an abused child.  The same day, a magistrate committed the child to the temporary custody of RCJFS.  Later, the magistrate adjudicated M.O. an abused child.  After the dispositional hearing, the magistrate ordered that M.O. remain in the temporary custody of RCJFS and the juvenile court adopted the magistrate's decision.  RCJFS later filed a motion seeking permanent custody of the child, which the magistrate granted.  The same day, the juvenile court adopted the magistrate's decision and awarded RCFJS permanent custody of M.O. This appeal followed.

## II.  Assignment of Error

{¶3}    Mother assigns one error for our review:

THE JUDGMENT IS CONTRARY TO LAW AS APPELLEE ROSS COUNTY CHILDREN SERVICES FAILED TO MAKE REASONABLE EFFORTS TO PLACE THE CHILD WITH A SUITABLE RELATIVE IN VIOLATION OF THE CHILD'S BEST INTEREST.

## III.  Mother's Failure to Object to Magistrate's Decision

{¶4}    Initially, the agency contends that Mother's failure to file objections to the magistrate's decision, which the trial court adopted, precludes this Court from considering the merits of Mother's assignment of error.  Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion [from the magistrate's decision], whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."  Juv.R. 40(D)(3)(a)(iii) requires a magistrate's decision to include conspicuous language informing the parties of their responsibility to

object to, rather than simply appeal, the magistrate's decision.

{¶5}    The provisions of Juv.R. 40(D) are analogous to those of Civ.R. 53(D). Like Juv.R. 40(D)(3)(a)(iii), Civ.R. 53(D)(3)(a)(iii) requires a magistrate's decision to include conspicuous language informing the parties of their responsibility to object to the decision.  If a "magistrate's decision does not comply with Civ.R. 53(D)(3)(a)(iii), then a party may assign as error on appeal the trial court's adoption of the magistrate's findings of fact and conclusions of law."  *In re A.W.C.*, Washington App. No. 09CA31, 2010-Ohio-3625, at ¶18, quoting *Picciano v. Lowers*, Washington App. No. 08CA38, 2009-Ohio-3780, at ¶17.  We have applied the same principle to Juv.R. 40(D).  Id. at ¶¶18-19.  "The rationale is that when a magistrate fails to comply with Civ.R. 53(D)(3)(a)(iii) (or Juv.R. 40(D)(3)(a)(iii)), the parties may be unaware of the strict waiver rule prescribed by Civ.R. 53(D)(3)(b)(iv) (or Juv.R. 40(D)(3)(b)(iv)) and the related time-limited procedures for preserving objections to a magistrate's decision."  Id. at ¶18, citing *Rocky v. Rockey*, Highland App. No. 08CA4, 2008-Ohio-6525, at ¶12.

{¶6}    Here the juvenile court adopted the magistrate's decision.  And although the juvenile court made an effort to include the Juv.R. 40(D)(3)(a)(iii) notice in its judgment, the magistrate's decision did not include the notice as Juv.R. 40(D)(3)(a)(iii) requires.  Accordingly, despite Mother's failure to file objections to the magistrate's decision, we will review the merits of her assignment of error.

### IV.  Permanent Custody Award

#### A.  Burden of Proof

{¶7}    A permanent custody award must be based upon clear and convincing evidence.  R.C. 2151.414(B)(1); *In re A.V.*, Lawrence App. No. 08CA31, 2009-Ohio-886, at ¶13.  The Supreme Court of Ohio has defined "clear and convincing evidence"

as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104, 495 N.E.2d 23. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.

### B.  Standard of Review

**{¶8}**    "Even under the clear and convincing standard, our review is deferential." *In re Buck*, Scioto App. No. 06CA3123, 2007-Ohio-1491, at ¶7.  "[A]n appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment." *In re K.J.*, Athens App. No. 08CA14, 2008-Ohio-5227, at ¶10, citing *In re Perry*, Vinton App. Nos. 06CA648 & 06CA649, 2006-Ohio-6128, at ¶40, in turn, citing *Schiebel* at 74.  The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler*, Hocking App. No. 04CA8, 2005-Ohio-1583, at ¶15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam) (noting that "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony").

### C.  Requirements for Permanent Custody Awards

{¶9} Under R.C. 2151.414(B)(1), a juvenile court cannot make an award of permanent custody of a child to a children services agency unless it finds by clear and convincing evidence that any one of the following conditions apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

* * *

{¶10} In addition to one of those four conditions, the court must also determine by clear and convincing evidence that the grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). The juvenile court must consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. R.C. 2151.414(D)(1). These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and

whether such a placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.  See R.C. 2151.414(D).

{¶11}  As we explain in more detail below, the agency must generally also make reasonable efforts to reunify the family before seeking termination of parental rights.

### D.  Agency's Efforts to Place Child with Suitable Relative

{¶12}  In arguing that the juvenile court erred when it awarded RCJFS permanent custody of M.O., Mother claims that the agency had the "burden of proving by clear and convincing evidence that not only is permanent custody in the child's best interest, but that no other less-drastic alternative is available."  (Appellant's Br. 3).  She asserts that RCJFS had a duty to make "reasonable efforts" to place M.O. with a suitable relative and under R.C. 2151.412(G)(2), a juvenile court "must consider" a relative placement "prior to granting permanent custody."  (Appellant's Br. 3).  And Mother contends because RCJFS failed to make "reasonable efforts" to place M.O. with the child's great-aunt, the trial court could not conclude that awarding the agency permanent custody of M.O. was in the child's best interest.

{¶13}  Mother's argument misinterprets RCJFS' statutory responsibilities and the duty of a juvenile court awarding a children's services agency permanent custody of an abused child.  It appears the court relied on R.C. 2151.414(B)(1)(b), abandonment, as a basis for the permanent custody award.  That provision does not require the court to find by clear and convincing evidence that no suitable relative is available for placement before awarding permanent custody to a children services agency.  See generally, *In re Keaton*, Ross App. Nos. 04CA2785 & 04CA2788, 2004-Ohio-6210, at ¶61.  The existence of a suitable relative willing to care for the child would certainly be relevant to

the court's best interest determination, specifically to whether the child's need for a legally secure placement can be achieved without a grant of permanent custody to the agency under R.C. 2151.414(D)(1)(d). See *In re A.A.*, Summit App. No. 22196, 2004-Ohio-5955, at ¶17. However, R.C. 2151.414(D) does not require a juvenile court to find by clear and convincing evidence that no suitable relative is available for placement before awarding a children services agency permanent custody. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶64.[1] As the *Schaefer* Court explained:

> [R.C. 2151.414(D)] requires a weighing of all the relevant factors * * *. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.

Id.

{¶14} Mother cites R.C. 2151.412(G)(2) in support of her claim that a juvenile court "must consider" a relative placement "prior to granting permanent custody" to an agency. Under R.C. 2151.412(A)(2), a public children services agency must prepare and maintain a case plan for any child to whom the agency is providing services and to whom the agency has temporary or permanent custody. R.C. 2151.412(G)(2) provides guidelines for the development of the plan and states:

> (G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:

> ***

---

[1] The *Schaefer* court interpreted an earlier version of R.C. 2151.414(D) similar to the current version of the statute.

(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family[.]

***

{¶15} However, "Ohio's courts have consistently recognized that the language in R.C. 2151.412(G) is precatory, not mandatory." *In re A.E.*, Franklin App. Nos. 07AP-685 & 07AP-748, 2008-Ohio-1375, at ¶35, citing *In re Halstead*, Columbiana App. No. 04 CO 37, 2005-Ohio-403, at ¶39, in turn, citing *In re Hiatt* (1993), 86 Ohio App.3d 716, 722, 621 N.E.2d 1222. As the Seventh District explained:

[T]his statute does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them. Therefore, the juvenile court's judgment is not in error simply because the court chose not to follow one of these suggested guidelines.

*Halstead* at ¶39.

{¶16} Contrary to Mother's contention, a public children services agency has no statutory duty to make "reasonable efforts" to place the child with an extended family member before it can obtain permanent custody of the child. As the Fifth District explained in *In re Warren*, Stark App. No. 2007CA00054, 2007-Ohio-5703, at ¶¶21-23:

With respect to the [agency's] duty to use reasonable efforts, we note no one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal "[t]o eliminate with all due

speed the need for the out-of-home placement so that the child can safely return home."  Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)-the "12 months out of 22" rule-"[i]f reasonable efforts to return the child to the child's home are required under section 2151.419" and the agency has not provided the services required by the case plan.  See, also, R.C. 2151.414(E)(1) (child may be placed with agency when, notwithstanding reasonable case planning and diligent efforts by the agency, parents fail to remedy problems that caused removal of child); and R.C. 2151.419 ("The agency shall have the burden of proving that it has made [the required] reasonable efforts" to prevent the child's removal or to return the child).

* * * [T]he Ohio Rules of Juvenile Procedure require that "[i]n any proceeding involving abuse, neglect, or dependency at which the court removes a child from the child's home or continues the removal of a child from the child's home, * * * the court shall determine whether the person who filed the complaint in the case and removed the child from the child's home * * * has made reasonable efforts to * * * (a) Prevent the removal of the child from the child's home; (b) Eliminate the continued removal of the child from the child's home; [or] (c) Make it possible for the child to return home." Juv.R. 27(B)(1).

[T]he [agency's] duty to use reasonable efforts *applies only to efforts to avoid removal of a child from her home or to reunify the child with her family, following removal.*  The [agency] is under *no statutory duty to make reasonable efforts to place a child with relatives* although relative placement is to be investigated.

(Emphasis added).

**{¶17}**  And even if the agency had a duty to make "reasonable efforts" to effect a relative placement, some competent and credible evidence demonstrates that the agency made such efforts in this case.  At the permanent custody hearing, Chastity Henry, a RCJFS caseworker, testified that the agency investigated possible relative placements for M.O.  The agency completed a home study on the child's maternal grandfather, R.R.  Barbara Lambert, a RCJFS kinship navigator, testified that she worked to complete home studies for M.O.'s relatives.  She testified that R.R. failed the home study.  Henry testified that the agency also attempted to complete home studies on C.H., C.S., and P.R.  Lambert testified that P.R., the child's maternal aunt, did not

submit requested paperwork. C.S. withdrew from the process before Lambert went to her home. C.H. failed to submit requested paperwork or get fingerprinted. Lambert explained that she would be sending C.H. a letter to deny the home study later in the week. In addition, Henry testified that she contacted the child's great-grandmother, but she was not interested in taking the child and could not provide Henry with names of additional family members who might be willing to care for the child. And although Mother complains that the agency should have made a greater effort to place the child with T.R., the child's great-aunt, Henry testified that she made an attempt to call T.R and left a message when she could not reach her.

{¶18} Mother cites *In re A.A.*, supra, in support of her position. There, a father appealed from a decision awarding permanent custody of his child, A.A., to a children services agency. *In re A.A.* at ¶1. The Ninth District reversed, finding that the agency failed to show by clear and convincing evidence that the award of permanent custody was in the child's best interest. Id. at ¶19. In discussing whether the child's need for a legally secure placement could be achieved without a grant of permanent custody to the agency under R.C. 2151.414(D)(1)(d), the court stated that this factor is "often established by the agency presenting evidence * * * that neither parent nor any suitable relative is available to care for the child on a permanent basis." Id. at ¶17. The court found that evidence established that there was a "relative available who was suitable for long-term placement," who the guardian ad litem and children services considered to be a potential adoptive placement, and who was "available and willing to take legal custody of [the child]" even though she preferred to adopt A.A. and not deal with the child's parents. Id. at ¶18. The court concluded that "[i]f a legally secure permanent placement could have been accomplished without terminating parental rights, however,

the agency should have explored it and the trial court should have considered this less drastic alternative to permanently severing a family relationship." Id.

{¶19} However, the *In re A.A.* Court did not reverse the trial court's decision solely based on this issue but pointed to the lack of evidence favoring termination on all of the best interest factors. Moreover, there is no evidence in this case that any of M.O.'s relatives was suitable for long-term placement and willing to take legal custody of the child. In addition, the *In re A.A.* Court did not impose the "reasonable efforts" duty on children services that Mother would have us impose in this case. The court simply reached the logical conclusion that if evidence shows that a willing and suitable relative exists for long-term placement, the court should explore that issue in its "best interest" analysis before granting a permanent custody motion.

{¶20} In sum, the agency had no statutory duty to make "reasonable efforts" to effect a relative placement before seeking permanent custody. Even if it did, the agency offered evidence that it made such efforts to place the child with six relatives. Moreover, although the possibility of a relative placement may be relevant to the best interest analysis, the juvenile court did not have to find by clear and convincing evidence that no suitable relative was available for placement before awarding the agency permanent custody of M.O. Accordingly, we overrule Mother's sole assignment of error and affirm the juvenile court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**