[Cite as *State v. Shadoan*, 2011-Ohio-4400.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 10CA904 |
| | : | |
| vs. | : | **Released: August 23, 2011** |
| | : | |
| ROY W. SHADOAN, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Lisa Rothwell, West Union, Ohio, for Appellant.

C. David Kelley, Adams County Prosecutor, and Barbara Moore-Eiterman, Adams County Assistant Prosecutor, West Union, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Roy W. Shadoan appeals his conviction in the Adams County Court of Common Pleas after a jury found him guilty of two counts of rape, felonies of the first degree in violation of R.C. 2907.02(A)(2); and one count of gross sexual imposition, a felony of the fourth degree in violation of R.C. 2907.05(A)(1).  On appeal, Appellant raises two assignments of error, arguing 1) he was denied due process of law when the state failed to deliver exculpatory evidence to him; and 2) the trial court erred when it determined he did not meet the criteria to file a second petition for post-conviction relief set forth in R.C. 2953.23.

Having reviewed the record, we find the state's failure to produce the subject evidence was not a constitutional error and we overrule both of Appellant's assignments of error. We affirm the trial court's judgment.

FACTS

{¶2} We previously stated the facts of this case in *State v. Shadoan*, 4th Dist. No. 03CA764, 2004-Ohio-1756:

{¶3} "On September 18, 2002, the thirteen-year-old victim [M.S.] called 911 from her friend's home. The victim stated: 'I'm making a, a complaint because my dad, he molested me.' On December 31, 2002, the Adams County Grand Jury returned an indictment charging [A]ppellant with two counts of rape, in violation of R.C. 2907.02(A)(2), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1).

{¶4} "Beginning on March 24, 2003, and continuing on March 25, 2003, the court held a jury trial. The victim testified that three separate incidents of sexual activity occurred between her and the appellant. The victim stated that one incident occurred while she was sleeping. She awoke upon realizing that appellant was licking her vagina. The victim testified that [A]ppellant's actions made her feel 'very uncomfortable' and 'scared.' Once she realized what was happening, she asked appellant to stop.

{¶5} "Another incident occurred when the appellant showed the victim his penis, told her to 'give it a kiss,' and then told her to 'suck it.' She complied because she was scared and 'did not know what to do.' The victim stated [Appellant] then inserted his penis in her mouth and put his hands on her head, moving her head in an up-and-down direction. Appellant subsequently ejaculated in the victim's mouth.

{¶6} "The victim explained that the third incident occurred while she watched cartoons. Appellant told the victim to get on her hands and knees. She complied because she 'did not know what to do.' She stated that she was 'scared and uncomfortable.' Appellant then positioned himself behind her and pulled down her pants and underwear. The victim stated that she felt pressure in her 'butthole' and that [A]ppellant's hands were on her hips. She stated that [A]ppellant rubbed his fingers by her vagina. She testified that she felt wetness on her 'butt cheeks' and 'in [her] vagina.' The victim stated that she wanted to move but [A]ppellant told her not to move. When appellant finished, he retrieved a rag and wiped the victim.

{¶7} "Appellant denied that he licked the victim's vagina or that he anally raped her. He admitted, however, that he ejaculated in the victim's mouth, but claims he did so because he thought that the person performing fellatio upon him was his wife. Appellant explained that he had been sleeping with his shirt covering

his eyes when he felt someone performing fellatio. He assumed that it was his wife, but after he ejaculated and sat up, he realized that it was the victim."

{¶8} "Appellant also presented evidence tending to show that the victim had a motivation to lie and to make up the allegations. He claimed that she did not like living with him and that she wanted to move to the State of Washington to live with other relatives." *Shadoan* at ¶ 8-12.

{¶9} The jury convicted Appellant of all three counts within the indictment. Appellant appealed his conviction, which we affirmed in March 2004. While that appeal was pending, Appellant filed a "Petition to Vacate or Set Aside Sentence," in which he argued he was denied effective assistance of counsel when his trial counsel failed to present exculpatory evidence. Specifically, Appellant argued his counsel should have presented the second page of a report from Children's Hospital Medical Center that noted the results of M.S.' vaginal and rectal exams were "normal." The trial court denied Appellant's petition because Appellant's appeal divested the court of jurisdiction to consider his petition. Appellant did not appeal the denial of his petition.

{¶10} Subsequently, in June 2005, Private Investigator Martin Yant ("Yant") contacted Appellant. Appellant's sister hired Yant to prove Appellant's innocence. In 2006, Yant obtained evidence from the Adams County Sheriff's Office, pursuant to a public records request, pertaining to Appellant's case. Yant received

an evidence worksheet from Matthew Potts, an employee of Adams County

Children Services Agency; the interview notes from Sheriff's Deputy Jim

Heitkemper; and pages one and three of the results of M.S.' examination at

Children's Hospital.

{¶11} Two years later, in August 2008, Appellant filed his second petition

for post-conviction relief. Appellant attached the evidence Yant obtained to his

petition and argued the state's suppression of that evidence denied him due

process.

{¶12} The trial court denied Appellant's petition as untimely. We remanded

the case for the trial court to consider whether Appellant was entitled to an

evidentiary hearing, whether the evidence was exculpatory, and whether Appellant

was denied due process.

{¶13} The trial court then afforded Appellant an evidentiary hearing.

Afterward, the court issued a written decision denying Appellant's second petition

as untimely. The trial court reasoned Appellant had failed to meet the criteria set

forth in R.C. 2953.23(A)(1) and the court was precluded from considering the

merits of his second petition.

{¶14} Appellant now appeals the trial court's decision.[1]

---

[1] As noted in our entry of January 25, 2011, Appellant's appeal is timely.

ASSIGNMENTS OF ERROR

I.      "APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS
        OF LAW BY WHEN THE STATE FAILED TO PROVIDE
        EXCULPATORY MATERIALS AS REQUIRED BY CRIMINAL RULE
        16 AND BRADY."

II.     "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT
        AS A MATTER OF FACT AND LAW AND/OR ABUSED ITS
        DISCRETION WHEN IT ERRONEOUSLY DETERMINED THAT
        APPELLANT FAILED TO MEET THE CRITERIA SET FORTH IN
        O.R.C. § 2953.23."

STANDARD OF REVIEW

{¶15} "Postconviction relief is a narrow remedy reserved for addressing errors of constitutional dimension that occurred outside the trial record." *State v. Davis*, 4th Dist. No. 10CA25, 2011-Ohio-1706, at ¶ 6, citing *State v. Steffen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67. "Unlike a direct appeal, a petitioner has no constitutional right to postconviction relief." Id. "The petitioner seeking postconviction relief has no more rights than those granted within the statute." Id., citing *State v. Calhoun,* 86 Ohio St.3d 279, 281, 1999–Ohio–102, 714 N.E.2d 905.

{¶16} Generally, an appellant must file his petition for post-conviction relief within 180 days of the filing of the transcript in an appeal, or within 180 days of the expiration of the time for filing an appeal, if he filed no appeal. R.C. 2953.21(A)(2). "The time limitation prescribed in R.C. 2953.21(A)(2) is jurisdictional, i.e., a trial court cannot entertain an untimely petition unless one of

the exceptions set forth in R.C. [2953.23(A)] applies." *Davis* at ¶ 9, citing *State v. Smith,* 4th Dist. No. 06CA65, 2007-Ohio-4730, at ¶ 11.

{¶17} Here, R.C. 2953.23(A)(2) does not apply because DNA testing has not established Appellant's actual innocence. What remains is for Appellant to satisfy R.C. 2953.23(A)(1), which provides, in pertinent part:

{¶18} "(A) * * * [A] court may not entertain * * * a second petition or successive petitions for * * * relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

"(1) Both of the following apply:

"(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, * * *.

"(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *."

{¶19} "The Supreme Court of Ohio has defined 'clear and convincing evidence' as 'the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal

cases. It does not mean clear and unequivocal.'" *In re M.O.*, 4th Dist. No. 10CA3189, 2011-Ohio-2011, at ¶ 7, quoting *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104, 495 N.E.2d 23.

{¶20} We review the trial court's denial of a petition for post-conviction relief after a hearing for abuse of discretion. See *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 45; *In re B.C.S.*, 4th Dist. No. 07CA60, 2008-Ohio-5771, at ¶ 9 (citing *Gondor*). "'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. "Under this highly deferential standard of review, we may not simply substitute our judgment for that of the trial court." *Woody v. Woody, 4th Dist. No. 09CA34, 2010-Ohio-6049, at ¶ 35*, citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. "Rather, we are limited to determining whether considering the totality of the circumstances, the trial court acted unreasonably, arbitrarily or unconscionably." Id., citing *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222, 459 N.E.2d 896, citing *Blakemore*, 5 Ohio St.3d at 218-220.

LEGAL ANALYSIS

{¶21} Appellant's second assignment of error is dispositive and we address it first. Appellant contends the newly discovered evidence reveals inconsistencies between M.S.' trial testimony and her pretrial statements to investigators, which Appellant could have used to impeach her. Appellant argues the state's entire case against him hinged on the credibility of M.S. and had the jury been presented with these inconsistent statements, they may have found her "testimony was exaggerated or unbelievable." (Appellant's Br. at 4.) Appellant claims the state's failure to disclose this evidence was a constitutional error and the jury would not have convicted him otherwise. We disagree.

{¶22} "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is 'evidence favorable to an accused' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." (Internal citations omitted.) *Unites States v. Bagley* (1985), 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481.

**{¶23}** "[T]he duty to disclose exculpatory evidence also extends to those officials acting within the prosecutorial arm of the government or on the government's behalf, including the police." *State v. Payne*, 10th Dist. No. 09AP-107, 2010-Ohio-1018, at ¶ 30, citing *Kyles v. Whitley* (1995), 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490. "A defendant is not, however, entitled to pretrial disclosure of all information that might be useful in contradicting favorable testimony. 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" (Internal citations omitted.) *State v. Hatton* (Apr. 19, 1999), 4th Dist. No. 97CA34, quoting *State v. Heyward* (May 18, 1998), 4th Dist. No. 96CA42.

**{¶24}** "[S]uch suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with 'our overriding concern with the justice of the finding of guilt,' a constitutional error occurs, and the conviction must be reversed, only if the evidence is material * * *." (Internal citations omitted.) *Bagley*, 473 U.S. at 678. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley* at 682. This standard applies regardless of whether the accused requested

the evidence be disclosed.  Id.  "Furthermore, we note that the materiality of suppressed evidence must be determined collectively rather than item-by-item." *Hatton*, citing *Kyles*, 514 U.S. at 436-437.

*Old Evidence*

{¶25} Preliminarily, Appellant was not unavoidably prevented from discovering all of the evidence he attached to his second petition.  While the first and third pages of the medical report from Children's Hospital Medical Center in Cincinnati, Ohio are "new," the second page is not.  The second page contains the results of the physical examination of M.S., which the state provided to Appellant prior to trial.  (See Appellant's Feb. 26, 2004 Petition to Vacate or Set Aside Sentence at 3.)  As the trial court correctly noted, Appellant's newly discovered evidence consists of "the field notes of the Children Services Investigator as well as the investigative notes of Deputy Heitkemper," and "additional pages (1 and 3) of a Medical Exam Report" that "were not disclosed in discovery prior to trial." (Judgment Entry at 3.)  We defer to the trial court's finding that these were the only "new" pieces of evidence and thus do not consider Appellant's arguments surrounding the second page of the medical report.

*New Evidence Medical Records*

{¶26} The two new pages of the medical report from Children's Hospital contain a narrative of what Jennifer Sharp, an employee of the Adams County

Department of Human Services, and M.S. related to Laura Monhollen, the social worker at the hospital. M.S. recounted the incident of awaking to Appellant performing cunnilingus on her; Appellant vaginally and anally penetrating her; Appellant forcing M.S. to give him a "blow job,"; Appellant licking her breasts; and Appellant giving her vibrators.

### Children Services Investigative Summary

{¶27} Matthew Potts ("Potts"), an employee of Adams County Children Services Agency, compiled an evidence worksheet summarizing conversations he had during the investigation. Potts' summary of his conversation with M.S. noted two incidences of sexual contact. The first was when Appellant performed cunnilingus on M.S. The second was when Appellant forced M.S. to perform fellatio on him. The second incident also included Appellant having vaginal and anal sex with M.S.

### Deputy Heitkemper's Interview Notes

{¶28} Adams County Sheriff's Deputy Jim Heitkemper ("Heitkemper") kept written notes of his interview with M.S. Heitkemper noted three incidences of sexual contact between M.S. and Appellant, and numbered them one through three, with number one containing two separate acts. The first incident occurred at 834 Castle (Cassel) Run Road. Appellant was drunk and as M.S. was talking to him, he pulled up her shirt and bra and licked her breast. Later that night, as M.S. was

asleep on the couch, she awoke to her pants being off and Appellant performing cunnilingus on her.

{¶29} The second incident occurred at 125 Castle (Cassel) Run Road, Appellant's mother's house. Appellant was lying in the laundry room with his eyes covered when M.S. came to ask him a question. Appellant told M.S. to kiss his penis, then to suck it. She did so, and Appellant ejaculated.

{¶30} The third incident again occurred at 125 Castle (Cassel) Run Road. While in the living room, Appellant pulled down M.S.' pants and told her to get on the love seat. Appellant approached her from behind, rubbed his penis on her genitals, then wiped her off and took her back to the other house. On the same page of Heitkemper's notes, he indicates this same conduct occurred later in a barn, but M.S. thought "it went in her 'butt.'"

*M.S.' Trial Testimony*

{¶31} M.S. testified to the incident where Appellant performed cunnilingus on her; the incident where Appellant had her perform fellatio on him; and the incident where Appellant was behind her rubbing his penis on her genitals, and anal penetration occurred. M.S. also testified Appellant had given her two vibrators.

*Materiality of Statements*

{¶32} Overall, we cannot say the outcome of the trial would have been different had the state timely disclosed this new evidence to Appellant. First, the newly discovered pretrial statements of M.S. are not inconsistent with her trial testimony. Black's Law Dictionary (9th ed. 2009), defines "inconsistent" as "[l]acking agreement among parts; not compatible with another fact or claim." Likewise, the Oxford Universal Dictionary (3d ed. 1955), defines "inconsistent" as "not agreeing in substance, spirit, or from; * * * at variance, discordant, incompatible, incongruous."

{¶33} While the multiple statements M.S. gave are not identical, they are compatible. In her pretrial statements to Heitkemper and the social worker at Children's Hospital, M.S. stated Appellant licked her breasts. In the statement at Children's Hospital, M.S. also stated Appellant gave her vibrators. Yet the fact that M.S. did not include these additional details in her other pretrial statements does not render her statements inconsistent, or incongruent; it merely means these statements contain additional facts. However, these additional facts are congruent with the other statements and not contradictory.

{¶34} Even more salient is the common facts amongst the statements. In every statement, M.S. stated Appellant performed cunnilingus on her. In every statement, M.S. stated Appellant made her perform fellatio on him. In every

statement, M.S. stated Appellant's penis contacted her vaginal and anal areas. Thus, we cannot say M.S.' pretrial statements are inconsistent with one another or her trial testimony.

{¶35} Second, Appellant already had an opportunity to cross-examine M.S. about the pretrial statement she gave to Potts. Appellant's counsel asked M.S. three times whether she had disclosed to Potts that Appellant had engaged in anal sex with her, and each time M.S. responded affirmatively. (Tr. at 71-72.) Appellant's counsel attempted to revisit the issue on recross examination, but withdrew the question upon the state's objection. (Tr. at 98.) This greatly lessens the probability the new evidence would change the outcome, because a jury once considered and rejected Appellant's implication that M.S.' statement to Potts was inconsistent with her trial testimony or showed a lack of credibility.

{¶36} Third, Appellant has failed to show how this new evidence would prevent a jury from convicting him. Appellant's testimony, his wife's testimony, and Appellant's other daughter's testimony, if believed, would have corroborated Appellant's theory that M.S. was a troubled teen who fabricated the allegations of sexual abuse in order to be placed in a different home where she would have more freedom. Yet the jury did not believe Appellant's theory of the case and convicted him of all charges. Appellant has not shown by clear and convincing evidence that introducing M.S.' pretrial statements would change that outcome.

{¶37} Therefore, we cannot say there is a reasonable probability that, had the suppressed evidence been disclosed to Appellant, the result of his trial would have been different.  The suppressed evidence, as a whole, is insufficient to undermine confidence in Appellant's conviction and is not material under *Bagley*. The state's failure to disclose immaterial evidence was not a constitutional error.

{¶38} Given the state's suppression of evidence was not a constitutional error, Appellant cannot demonstrate by clear and convincing evidence the outcome would have been different but for a constitutional error – as there was none – and he cannot satisfy R.C. 2953.23(A)(1)(b).  As Appellant failed to satisfy R.C. 2953.23(A), the trial court was right not to entertain the merits of Appellant's second petition.

{¶39} Accordingly, we find the trial court did not abuse its discretion when it held Appellant failed to meet the criteria in R.C. 2953.23(A)(1) and denied his second petition for post-conviction relief.  As such, we overrule Appellant's second assignment of error, overrule his first assignment of error as moot, and affirm the trial court's judgment.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Kline, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,


BY:  _____
                Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**