[Cite as *In re M.S.*, 2012-Ohio-3207.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

In re M.S., D.S., and A.S.,                     :
                                                :
Adjudicated Dependent Children         :        Case Nos.   11CA823 &
                                                :                    11CA824
                                                :
                                                :        DECISION AND
                                                :        JUDGMENT ENTRY
                                                :
                                                :        Filed:  July 9, 2012
_____

APPEARANCES:

Aaron M. McHenry, Chillicothe, Ohio, for Appellant Mother.

Lori J. Rankin, Chillicothe, Ohio, for Appellant Father.

Elisabeth M. Howard, Waverly, Ohio, for Appellee, Pike County Children Services
Board.
_____

Kline, J.:

{¶1}   Virginia S. (hereinafter "Mother") and Michael S. (hereinafter "Father")
appeal the judgment of the Pike County Court of Common Pleas, Juvenile Division.
The trial court's judgment (1) terminated Mother's and Father's parental rights and (2)
granted permanent custody of Mother and Father's children to the Pike County Children
Services Board (hereinafter "Children Services").  On appeal, Mother contends that the
trial court's finding that permanent custody is in the best interests of the children is not
supported by competent, credible evidence.  Because the record supports the trial
court's finding that permanent custody is the best interests of the children, we disagree.
Father contends the trial court erred by finding that, prior to the permanent custody

hearing, Children Services made reasonable efforts to reunify Mother and Father with their children.  Because the record supports the trial court's "reasonable efforts" finding, we disagree.

{¶2}    Accordingly, we affirm the judgment of the trial court.

I.

{¶3}    Mother and Father are the parents of M.S., D.S., and A.S (collectively, the "Children").  (At the time of the permanent custody hearing, the Children's ages were five, four, and one, respectively.)

{¶4}    Mother and Father have a history of substance abuse.  Mother and Father also have had difficulty maintaining a clean living environment that is suitable for raising children.  Additionally, in 1992, Father was convicted of attempted rape.  Father testified that he served about twelve-and-a-half years in prison for that conviction.  As a result of his conviction, Father is a registered sex offender.

{¶5}    Police responded to Mother and Father's home on a domestic violence call in June 2009.  The police arrested both Mother and Father.  In July 2009, following the domestic violence incident, Children Services filed a motion requesting the trial court to adjudicate M.S. and D.S. as dependent.  (A.S. was born in November 2009, during the pendency of these proceedings.)

{¶6}    The trial court adjudicated M.S. and D.S. dependent on August 14, 2009. The Children were then placed in the temporary custody of their maternal grandmother, L.D.  On August 27, 2009, the Children returned to Mother and Father under court ordered protective supervision.  But, on September 4, 2009, Mother and Father were again arrested, and M.S. and D.S. were placed into foster care.

{¶7}    As indicated, A.S. was born in November 2009.  He was immediately placed into the temporary custody of Children Services.  And, on December 18, 2009, the trial court adjudicated A.S. as dependent.

{¶8}    Children Services devised a case plan for Mother and Father to regain custody.  Mother made sufficient progress on the case plan, and the trial court granted Mother custody of the Children on March 16, 2010.  Mother, however, was unable to properly care for the Children.  During August 2010, Mother briefly left town with her boyfriend and without the Children.  While she was away, the Children entered Father's care.  At that time, the court's orders prevented Father from having unsupervised visitations with the Children.  On August 16, 2010, the police located Father and the Children staying in the gazebo of a local church.  As a result, Children Services regained temporary custody of the Children.  The Children were placed back into foster care, and they remained in foster care throughout the remainder of the proceedings.

{¶9}    On March 17, 2011, Children Services filed a motion for permanent custody.  The trial court held a hearing on this motion on June 30, 2011.  Children Services later withdrew the March 17, 2011 motion.  Children Services filed another motion for permanent custody on July 22, 2011.  The trial court held another hearing on September 8, 2011, and the parties stipulated that the evidence from the June 30, 2011 hearing could also be used to decide the July 22, 2011 motion.

{¶10}  Following the permanent custody hearings, the trial court issued findings of fact and conclusions of law on November 30, 2011.  The court determined (1) that the Children had been in temporary custody for at least 12 months of a consecutive 22-month period and (2) that it was in the best interests of the Children to award permanent

custody to Children Services.  As a result, the trial court terminated the parental rights of Mother and Father and awarded permanent custody of M.S., D.S., and A.S. to Children Services.

{¶11}  Mother appeals and asserts the following assignment of error: "THE JUVENILE COURT ERRED WHEN IT GRANTED PIKE COUNTY CHILDREN SERVICES BOARD PERMANENT CUSTODY OF APPELLANT'S CHILDREN."

{¶12}  Father appeals and asserts the following assignment of error: "THE JUVENILE COURT ERRED BY FINDING THAT THE STATE EMPLOYED REASONABLE EFFORTS TO REUNIFY THE APPELLANT WITH HIS CHILDREN AND THUS ERRED IN TERMINATING APPELLANT'S PARENTAL RIGHTS."

II.

{¶13}  Initially, we note that a parent's "interest in the care, custody, and control of [his or her] children 'is perhaps the oldest of the fundamental liberty interests[.]'" *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 8, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  Further, "[p]ermanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *In re D.A.*, 2007-Ohio-1105, at ¶ 10, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).  As such, "parents 'must be afforded every procedural and substantive protection the law allows.'" *In re D.A.*, 2007-Ohio-1105, at ¶ 10, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).  "'[I]t is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or

controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).

A.

**{¶14}** We first consider Mother's assignment of error. Mother argues that competent, credible evidence does not support the trial court's judgment awarding permanent custody of the Children to Children Services. Specifically, Mother challenges the trial court's finding that the permanent custody award is in the Children's best interests.

**{¶15}** "A public or private child-placement agency may file a motion under R.C. 2151.413(A) to request permanent custody of a child after a court has committed the child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2)." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22. Once a motion is filed under R.C. 2151.413(A), the court must follow R.C. 2151.414. *Id.*

**{¶16}** A trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1)(a)-(d) applies; and (2) it is in the child's best interest. R.C. 2151.414(B)(1); *In re McCain*, 4th Dist. No. 06CA654, 2007-Ohio-1429, ¶ 13. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). Thus, "[i]t is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Id.*

**{¶17}** We will not reverse the judgment of the trial court in a permanent custody case when some competent, credible evidence supports the trial court's findings. *In re Marano*, 4th Dist. No. 04CA30, 2004-Ohio-6826, ¶ 12. "We give the trial court's final determination 'the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Id.*, quoting *In re Alfrey*, 2d Dist. No. 01CA0083, 2003-Ohio-608, ¶ 102.

**{¶18}** The trial court found that Children Services satisfied R.C. 2151.414(B)(1)(d). That is, the court found that the Children had been in the temporary custody of Children Services for twelve or more months of a consecutive twenty-two-month period. *See id.* Mother does not dispute this finding on appeal. Instead, Mother argues that the trial court erred when it found that permanent custody was in the Children's best interests. Accordingly, we must determine if competent, credible evidence supports the trial court's findings regarding the best interests of the Children. *See In re D.N.*, 4th Dist. No. 11CA3213, 2011-Ohio-3395, ¶ 17.

**{¶19}** R.C. 2151.414(D)(1) governs the best-interest-of-the-child analysis, and that statute provides as follows:

> In determining the best interest of a child * * * the
> court shall consider all relevant factors, including, but
> not limited to, the following:
> (a) The interaction and interrelationship of the child
> with the child's parents, siblings, relatives, foster
> caregivers and out-of-home providers, and any other
> person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414(E)(7) to 2151.414(E)(11)] apply in relation to the parents and child.

{¶20} We begin with the trial court's finding regarding the custodial history of the Children. The trial court found that "[t]he custodial history of the children has been one of foster care, with a brief period between March 2010, to August 2010, with the mother." November 30, 2011 Findings of Fact and Conclusions of Law at 6. The evidence supports the trial court's findings regarding the Children's custodial history. As indicated above, from September 2009, until Children Services filed its July 22, 2011 motion for permanent custody, M.S. and D.S. were in foster care except for a brief period of time when Mother regained custody of the Children. A.S. was in foster care immediately following his birth in November 2009. Mother obtained custody of the Children in March 2010. But, on August 16, 2010, Children Services regained temporary custody of the Children. Julie Lundy, a caseworker for Children Services, testified that Children Services regained temporary custody following anonymous reports that the Children were not staying with Mother, but instead, they were staying with Father at a gazebo of a local church. And, at that time, the court's orders prohibited Father from having unsupervised visitations with the Children. The Children remained in the temporary custody of Children Services throughout the remainder of the proceedings.

{¶21} The trial court also found that the Children's need for a legally secure placement was "high" due to their ages. And, the court found that legally secure placement could not be achieved without a grant of permanent custody to Children Services. The evidence supported this finding. Neither parent had stable housing. Father was incarcerated at the time of the September 8, 2011 hearing. At the June 30, 2011 hearing, Father testified that he was in the process of "building" his home. Father

had been building that home for about a year, but it was not yet completed at the time of the hearing. Mother testified that she resided at multiple locations since Children Services obtained temporary custody of the Children in September 2009. And, the evidence showed that, at one point, Mother was staying at a homeless shelter, but she was evicted after failing a drug test.

**{¶22}** Mother challenges the trial court's finding that a legally secure placement for the Children could not be achieved without a grant of permanent custody to Children Services. Mother bases this challenge on the testimony of L.D., the Children's maternal grandmother. L.D. testified that she was willing to assume custody of the Children.

**{¶23}** "The existence of a suitable relative willing to care for the [children] would certainly be relevant to the court's best interest determination[.]" *In re M.O.*, 4th Dist. No. 10CA3189, 2011-Ohio-2011, ¶ 13. Specifically, this consideration applies "to whether the child's need for a legally secure placement can be achieved without a grant of permanent custody to the agency under R.C. 2151.414(D)(1)(d)." *Id.* The evidence indicates, however, that L.D. was not a "suitable" relative to care for the Children. Lundy testified that there were concerns with L.D. because L.D. did not inform Children Services during a home study that her boyfriend lived with her. L.D.'s boyfriend was on probation following an alcohol-related ATV accident. And, between 1985 and 2007, children services agencies in Ohio received 27 reports regarding L.D., and Franklin County Children Services substantiated three of those reports as cases of neglect. Considering this evidence, L.D.'s willingness to assume custody of the Children does not undermine the trial court's finding that a legally secure placement for the Children cannot be achieved without a grant of permanent custody to Children Services.

{¶24} The trial court made several findings under R.C. 2151.414(D)(1) (i.e., the Children's interactions with those who would significantly affect the Children). The trial court found that Mother missed several visits. The testimony of Children Services caseworkers, Misty Byler and Lundy, supports this finding. (Mother also admitted that she missed several visits.) Mother, however, challenges the findings regarding her missed visits. She notes that she provided excuses to Children Services when she missed visits. Mother cited illness for several missed visits, but she failed to provide medical documentation. The record indicates that Mother sometimes chose to accompany her boyfriend to his Veterans Administration appointments instead of attending her scheduled visits with the Children. Mother also contends that many of her missed visits were due to transportation problems. The record shows, however, that Children Services advised Mother that public transportation was available to her. And, the trial court found that, based on Byler's testimony, Mother had little interaction with the Children during some of the visits. Specifically, Byler testified that Mother "a lot of times is preoccupied with texting or whatnot during visits[.]" Tr. Vol. II at 9.

{¶25} The trial court also found that the Children were thriving with their foster parents. Byler testified that the Children are "doing very well" in their foster home. Tr. Vol. II at 20. Moreover, according to the guardian ad litem's testimony, M.S. started pre-school with some developmental delays. But after spending time in foster care, M.S. is now on target with his peer group.[1]

---

[1] The trial court's findings state, "M.S. had started school with several deficits, but is *not* on target with his peer group (as indicated by the GAL)." (Emphasis added.) November 30, 2011 Findings of Fact and Conclusions of Law at 5. The word "not" appears to be a typo. The guardian ad litem testified as follows regarding M.S.'s development: "[M.S.]

**{¶26}** (The trial court found that the Children were too young to express their wishes directly or through the guardian ad litem.)

**{¶27}** We also note that the record contains additional evidence supporting the trial court's best-interests-of-the-children finding. At the September 8, 2011 hearing, Byler testified regarding Mother's most recent drug tests. Byler testified that Mother tested positive for methamphetamine on June 29, July 6, and July 22, 2011. Byler also testified that she visited Mother's home at the end of June 2011, and Mother "had the beds torn apart" in one dining area. Sept. 8, 2011 Tr. at 28. Apparently, Mother told Byler that Mother was going to have the house ready for the Children. But, Byler returned at the end of August for an unannounced visit, and Byler testified that "there was still no set up for kids." *Id.* at 29. Byler also testified that she had "never seen it so dirty[.]" *Id.*

**{¶28}** For all the reasons stated above, we conclude that competent, credible evidence supports the trial court's findings that awarding permanent custody to Children Services is in the Children's best interests. Accordingly, we overrule Mother's assignment of error.

B.

**{¶29}** Father argues that the trial court erred by finding that Children Services made reasonable efforts to reunite Father with the Children.

**{¶30}** As Father notes, R.C. 2151.419(A)(1) addresses an agency's reasonable efforts to return children to their home. That statute provides as follows:

---

was initially a little bit delayed. Um, he has since made up um, tremendous progress and he's on target, and will be attending Kindergarten next year." Tr. Vol. I at 55.

[A]t any hearing held pursuant to section 2151.28,

division (E) of section 2151.31, or section 2151.314,

2151.33, or 2151.353 of the Revised Code at which

the court removes a child from the child's home or

continues the removal of a child from the child's

home, the court shall determine whether the public

children services agency * * * has made reasonable

efforts to prevent the removal of the child from the

child's home, to eliminate the continued removal of

the child from the child's home, or to make it possible

for the child to return safely home.

{¶31}  The permanent custody hearing was not held pursuant to any of the statutes listed in R.C. 2151.419(A)(1).  Instead, Children Services filed its motion for permanent custody pursuant to R.C. 2151.413.  And as the Supreme Court of Ohio has found, R.C. 2151.419(A)(1) "makes no reference to a hearing on a motion for permanent custody.  Therefore, '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.'"  (Alteration sic.)  *C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 41, quoting *In re A.C.*, 12th Dist. No. CA2004-05-041, 2004-Ohio-5531, ¶ 30.

{¶32}  During the course of the proceedings the trial court held several hearings pursuant to R.C. 2151.353.  For these hearings, the trial court found that Children Services had made reasonable efforts to prevent the removal of the Children from their

home, to eliminate the continued removal of the Children from their home, or to make it possible for the Children to return safely home.  *See* R.C. 2151.419(A)(1).

**{¶33}**  On appeal, Father argues that the trial court erred by finding that Children Services made reasonable efforts to reunify the Children with their parents because Children Services did not assist Father in obtaining adequate housing.  Father contends that Children Services identified obtaining suitable housing as Father's main goal.  Thus, according to Father, because Children Services made no effort to help Father obtain suitable housing, the trial court erred in finding that Children Services made reasonable efforts to reunite Father with the Children.

**{¶34}**  Significantly, the record reveals that Father did not raise any issues at the trial court level related to Children Services' reasonable efforts to reunify Father and the Children.  Thus, because Father failed to challenge the trial court's findings below, we will review Father's assignment of error under a plain error standard.  *See Sprouse v. Miller*, 4th Dist. No. 07CA32, 2008-Ohio-4384, ¶ 10-12.  "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."  *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶35}**  Here, the record supports the trial court's reasonable efforts findings.  Throughout the proceedings Children Services adopted case plans to assist Father with reuniting with the Children.  Children Services directed Father toward services to address substance abuse problems as well as toward parenting classes.  In fact, Father

concedes that "[Children Services] made reasonable efforts to point Father in the direction of services for substance abuse counseling, parenting classes, and anger management[.]"  Father's Appellant's Brief at 5.

{¶36}  As a result, Father cannot show that the trial court's reasonable efforts findings "seriously affect[] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.  Thus, Father has not demonstrated that the trial court committed plain error when it found that Children Services employed reasonable efforts to reunite the Children with their parents.  Accordingly, we overrule Father's assignment of error.

C.

{¶37}  In conclusion, we overrule both Mother's assignment of error and Father's assignment of error, and we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellants shall pay equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. and Harsha, J.:  Concur in Judgment & Opinion.

For the Court

BY:_____
Roger L. Kline, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**