[Cite as *In re C.S.*, 2015-Ohio-4883.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| In re  C.S. | : | |
| I.H. | : | Case No. 15CA18 |
| | : | |
| Adjudicated neglected | : | |
| abused dependent | : | |
| children. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | RELEASED: 11/20/2015 |

_____

**APPEARANCES**:

James A. Wallace, Athens, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Athens County Assistant Prosecuting Attorney, Athens, OH, for appellee Athens County Children Services.

_____

Hoover, P.J.

{¶ 1} Appellant, M.S., appeals the trial court's judgment that awarded appellee, Athens County Children Services (ACCS), permanent custody of her two biological children, four-year old C.S. and eighteen-month old I.H. For the reasons that follow, we affirm the trial court's judgment.

I.  FACTS

{¶ 2} On January 16, 2014, law enforcement officers discovered heroin inside the home appellant and I.H.'s father, J.H., shared. Both appellant and J.H. were arrested and charged with felony drug offenses. ACCS obtained emergency custody of the two children.

{¶ 3} On January 17, 2014, ACCS filed abuse, neglect, and dependency complaints concerning C.S. and I.H. and requested temporary custody of the children. On March 10, 2014, the trial court adjudicated the children abused, neglected, and dependent and awarded ACCS temporary custody of the children.

{¶ 4} ACCS developed a case plan that required appellant (1) to become a law-abiding citizen and to specifically refrain from "the drug trade," (2) to no longer use illicit substances, (3) to follow all rules of parole and incarceration, (4) to attend substance abuse counseling and submit to random drug screens, and (5) to obtain and maintain housing upon her release from incarceration.

{¶ 5} On October 29, 2014, ACCS filed a motion to modify the disposition to permanent custody. ACCS alleged that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. ACCS argued that C.S.'s father has abandoned her. ACCS claimed that I.H.'s father received a six-year prison sentence and thus will be unavailable to care for the child for at least six years. ACCS noted that appellant has "had limited ability to engage in services to address the substance abuse and parenting issues or to address the needs of the children," but further asserted that appellant "has been unwilling to take advantage of the programs offered by the penal system." ACCS asserted that appellant indicated that she does not need substance abuse treatment. ACCS further claimed that appellant informed her caseworker that her substance abuse issues are J.H.'s "fault." ACCS contended that appellant "has refused to acknowledge and work on her issues to the extent possible while incarcerated." ACCS alleged that appellant "has not attempted to engage in the programming available to her" and that appellant "refuses to acknowledge her

responsibility for her children being placed in foster care and has declined to participate in what services are available in the state penal system."

{¶ 6} On January 12, 2015, ACCS filed a semi annual administrative review.  In it, ACCS asserted that appellant "sheds all responsibility for her involvement and drug use and has not seen the benefits of a rehabilitation course and has not yet registered for one." ACCS further charged that appellant "has not taken any responsibility for her drug use or for the unintended consequences of her actions."

{¶ 7} On February 17 and 19, 2015, the trial court held a hearing to consider ACCS's permanent custody motion. Jessica Pennington testified that I.H. received services through Help Me Grow. Pennington explained that she met with appellant on a few occasions and had phone conferences with her. Pennington stated that appellant "followed all of our recommendations" and displayed an ability and willingness to work with Pennington, even though appellant remained incarcerated.

{¶ 8} ACCS family services caseworker Christopher Imm testified that appellant informed him that she would like the children returned to her care upon her release from prison. Imm stated that appellant enrolled in a substance abuse program during the week before the permanent custody hearing.

{¶ 9} ACCS caseworker Rob Goeller testified that he discussed substance abuse treatment with appellant, but appellant stated that she did not plan to engage in substance abuse treatment. Goeller stated that appellant indicated that she did not have a substance abuse problem. Goeller explained that he took the children to visit appellant in prison, but ACCS eventually discontinued the visits because it stressed the children.

{¶ 10} Appellant testified that she started a substance abuse treatment program "this month." She admitted that she remains in prison for at least another year. Appellant stated that obtaining housing upon her release will "take some time" and that she will use community resources to find housing. Appellant claimed that she had never tried heroin until she met J.H. in 2012. Appellant further related her belief that she will be able to abstain from using heroin when she is released from prison.

{¶11} The children's guardian ad litem testified that awarding ACCS permanent custody would be in the children's best interests. She stated that she learned that appellant expressed a desire to be reunified with the children upon her release from prison in February 2016, but stated, "speaking realistically in the time it would take her to be released and establishing housing, establish income, uh, based on her statements today there's not a solidified plan for her to do that." The guardian ad litem continued: "The children they deserve permanency and they deserve stability now, and I don't think that they should have to languish in the temporary situation that they're currently in for another year to year and a half by the time [appellant] is released and could establish herself."

{¶ 12} On April 8, 2015, the trial court granted ACCS permanent custody of the two children. The court found that R.C. 2151.414(E)(1), (4), (10), and (12) applied, and thus, that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. With respect to C.S.'s father, the court found that he abandoned the child. The court explained its findings regarding the remaining factors as follows:

These parents have been in jail or prison for most of the time this Court

case has been open (over one year). [J.H.] readily admits that he will be of

no help to his child and chose to return to prison before the hearing on this

motion was finished. To this day, [appellant] continues to accept little

responsibility for this situation, choosing instead to blame [J.H.] only. This

she claims even though the drug activities were occurring in the home

with the children present. Clearly the parents' incarcerations have impeded

many standard efforts at reunification, but even so, [appellant] continues

to be resistant to treatment and counseling within the prison system. The

children should not be made to wait on the off chance that mother

eventually straightens out her life.

The court additionally determined that permanent custody would serve the children's best

interests. As a result, the court awarded ACCS permanent custody of the children and

terminated appellant's parental rights. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶ 13} Appellant raises one assignment of error.

THE TRIAL COURT'S FINDING THAT THE CHILDREN CANNOT
BE PLACED WITH EITHER PARENT WITHIN A REASONABLE
TIME OR SHOULD NOT BE PLACED WITH EITHER PARENT WAS
NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

## III. ANALYSIS

{¶ 14} In her sole assignment of error, appellant asserts that the record does not

contain clear and convincing evidence to support the trial court's finding that the children

cannot be placed with her within a reasonable time or should not be placed with her.

## A. STANDARD OF REVIEW

{¶ 15} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re R.M.,* 2013–Ohio–3588, 997 N.E.2d 169, ¶ 53 (4th Dist.).

> " Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' "

*Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 16} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord In re Pittman,* 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24.

{¶ 17} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is: "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). *Accord In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.*, 2013-Ohio-3588, at ¶ 55.

{¶ 18} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the

[judgment] must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.,* quoting *Martin* at 175; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 19} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. As the *Eastley* court explained:

" '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' "

*Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 20} Within her assignment of error, appellant argues that the standard of review we traditionally have applied in permanent custody cases is too deferential. Appellant asserts that the standard of review we have applied reads:

> We will not reverse a judgment of the trial court in a permanent custody
>
> case when some competent, credible evidence supports the trial court's
>
> findings. *In re Marano*, 4th Dist. No. 04CA30, 2004-Ohio-6826, ¶ 12.
>
> "We give the trial court's final determination 'the utmost respect, given
>
> the nature of the proceeding and the impact the court's determination will
>
> have on the lives of the parties concern.' " *Id.*, quoting *In re Alfrey*, 2nd
>
> Dist. No. 01CA0083, 2003-Ohio-608, ¶ 102.

*In re M.S.*, 4th Dist. Pike Nos. 11CA823, 11CA824, 2012-Ohio-3207, ¶ 17.

{¶ 21} Appellant argues that the standard of review set forth in *M.S.* is wrong because it fails to recognize the "clear and convincing evidence" burden of proof. Appellant contends that when the burden of proof at trial is clear and convincing, then a reviewing court must find more than "some competent and credible evidence" to affirm the judgment. Appellant asserts that in a permanent custody case, where the burden of proof is clear and convincing, a reviewing court must examine the record to determine whether clear and convincing indeed exists to support the trial court's judgment.

{¶ 22} We believe that we have already refined the *M.S.* standard. *E.g., In re N.S.N.*, 4th Dist. Washington Nos. 15CA6, 15CA7, 15CA8, 15CA9, 2015-Ohio-2486, ¶¶ 24-28; *In re B.C.-1*, 4th Dist. Athens Nos. 14CA43, 14CA48, 2015-Ohio-2720, ¶¶ 34-36. We stated that the manifest-weight-of-the-evidence standard applies and that the ultimate question is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *See K.H.*, 119 Ohio St.3d 538, 2008 -Ohio- 4825, 895 N.E.2d 809, at ¶ 43. We note that appellant premises her argument upon decisions that pre-date our decision in *In re R.M.*, *supra*. In *R.M.*, we clarified the standard of review that applies

when we review permanent custody decisions. We therefore reject appellant's argument

that we do not apply the correct standard of review in permanent custody cases.

## B.  PERMANENT CUSTODY PRINCIPLES

{¶ 23} A parent has a "fundamental liberty interest" in the care, custody, and

management of his or her child and an "essential" and "basic civil right" to raise his or

her children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599

(1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re*

*D.A.,* 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829, ¶¶ 8-9. A parent's rights,

however, are not absolute. *In re D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of

a parent * * * are always subject to the ultimate welfare of the child, which is the polestar

or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106,

391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974). Thus,

the state may terminate parental rights when a child's best interest demands such

termination. *In re D.A.* at ¶ 11.

{¶ 24} Before a court may award a children services agency permanent custody of

a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of

the hearing is to allow the court to determine whether the child's best interests would be

served by permanently terminating the parental relationship and by awarding permanent

custody to the agency. *Id.* Additionally, when considering whether to grant a children

services agency permanent custody, a trial court should consider the underlying purposes

of R.C. Chapter 2151, as set forth in R.C. 2151.01:

(A) To provide for the care, protection, and mental and physical

development of children * * * whenever possible, in a family

environment, separating the child from the child's parents only when

necessary for the child's welfare or in the interests of public safety;

(B) To provide judicial procedures through which Chapters 2151. and

2152. of the Revised Code are executed and enforced, and in which the

parties are assured of a fair hearing, and their constitutional and other legal

rights are recognized and enforced.

### C.  PERMANENT CUSTODY FRAMEWORK

{¶ 25} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a

child to a children services agency if the court determines, by clear and convincing

evidence, that the child's best interest would be served by the award of permanent

custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary

custody of one or more public children services agencies or private child

placing agencies for twelve or more months of a consecutive twenty-two-

month period, or has not been in the temporary custody of one or more

public children services agencies or private child placing agencies for

twelve or more months of a consecutive twenty-two-month period if, as

described in division (D)(1) of section 2151.413 of the Revised Code, the

child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's

parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are

able to take permanent custody.

(d) The child has been in the temporary custody of one or more public

children services agencies or private child placing agencies for twelve or

more months of a consecutive twenty-two-month period, or the child has

been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1)

of section 2151.413 of the Revised Code, the child was previously in the

temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from

whose custody the child has been removed has been adjudicated an

abused, neglected, or dependent child on three separate occasions by any

court in this state or another state.

{¶ 26} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests. In the case at bar, appellant does not challenge the trial court's best interest finding. Instead, she challenges the trial court's R.C. 2151.414(B)(1)(a) finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. We limit our review accordingly.

D.  R.C. 2151.414(E)

{¶ 27} R.C. 2151.414(E) governs a trial court's analysis of whether a child cannot be placed with either parent within a reasonable time or should not be placed either parent. The statute requires a trial court to "consider all relevant evidence" and further directs a court to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if clear and convincing evidence shows the existence of any one of the enumerated factors. As relevant here, R.C. 2151.414(E)(1), (4), and (12) state that a court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" if:

> (1) Following the placement of the child outside the child's home and
> notwithstanding reasonable case planning and diligent efforts by the
> agency to assist the parents to remedy the problems that initially caused
> the child to be placed outside the home, the parent has failed continuously
> and repeatedly to substantially remedy the conditions causing the child to
> be placed outside the child's home.  In determining whether the parents
> have substantially remedied those conditions, the court shall consider
> parental utilization of medical, psychiatric, psychological, and other social
> and rehabilitative services and material resources that were made available
> to the parents for the purpose of changing parental conduct to allow them
> to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by
> failing to regularly support, visit, or communicate with the child when

able to do so, or by other actions showing an unwillingness to provide an

adequate permanent home for the child;

* * *

(12) The parent is incarcerated at the time of the filing of the motion for

permanent custody or the dispositional hearing of the child and will not be

available to care for the child for at least eighteen months after the filing

of the motion for permanent custody or the dispositional hearing.

{¶ 28} A trial court may base its decision that a child cannot be placed with either

parent within a reasonable time or should not be placed with either parent upon the

existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone

will support a finding that the child cannot be placed with either parent within a

reasonable time or should not be placed with either parent. *E.g., In re C.F.,* 113 Ohio

St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 50; *In re William S.,* 75 Ohio St.3d 95, 99,

661 N.E.2d 738 (1996). Here, the trial court found that R.C. 2151.414(E)(1), (4), (10),

and (12) applied.

{¶ 29} Before we consider appellant's arguments regarding the R.C. 2151.414(E)

factors, we observe that although the trial court entered some findings of fact and

conclusions of law, appellant did not file a request for findings of fact and conclusions of

law. Civ.R. 52 states: "When questions of fact are tried by a court without a jury,

judgment may be general for the prevailing party unless one of the parties in writing

requests otherwise * * * in which case, the court shall state in writing the conclusions of

fact found separately from the conclusions of law." Additionally, R.C. 2151.414(C)

states: "If the court grants permanent custody of a child to a movant under this division,

the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. *In re Barnhart,* 4th Dist. Athens No. 02CA20, 2002–Ohio–6023, ¶ 23, citing *Pawlus v. Bartrug,* 109 Ohio App.3d 796, 801, 673 N.E.2d 188 (9th Dist.1996), and *Wangugi v. Wangugi,* 4th Dist. Ross No. 99CA2531, 2000 WL 377971 (Apr. 12, 2000). " '[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts.' " *Id.,* quoting *Fallang v. Fallang,* 109 Ohio App.3d 543, 549, 672 N.E.2d 730 (12th Dist.1996).

{¶ 30} We have applied this rule to R.C. 2151.414 permanent custody cases and have stated that unless a party requests findings of fact and conclusions of law, a trial court need not set forth specific factual findings regarding each R.C. 2151.414(D) best interest factor. *N.S.N.*, *supra*, at ¶¶ 36-37; *In re M.M.,* 4th Dist. Scioto No. 07CA3203, 2008–Ohio–2007, ¶ 20; *In re Pettiford,* 4th Dist. Ross No. 06CA2883, 2006–Ohio–3647, ¶ 28; *In re Myers,* 4th Dist. Athens No. 02CA50, 2003–Ohio–2776, ¶ 23, citing *In re Malone,* 4th Dist. Scioto No. 93CA2165, 1994 WL 220434 (May 11, 1994); *In re Dyal,* 4th Dist. Hocking No. 01CA12, 2001 WL 925423, fn. 3 (Aug. 9, 2001), quoting *In re Day,* 10th Dist. Franklin No. 00AP-1191, 2001 WL 125180 (Feb. 15, 2001); *accord In re R.H.,* 5th Dist. Perry No. 10CA9, 2010–Ohio–3293, ¶ 14. If, however, a party requests findings of fact and conclusions of law, then the trial court must set forth specific factual findings that correlate to each best interest factor. *Myers* at ¶ 23. Additionally, the

record must indicate that the trial court indeed considered the proper statutory factors. *In re Allbery,* 4th Dist. Hocking No. 05CA12, 2005–Ohio–6529, ¶ 13; *In re C.C.,* 10th Dist. Franklin No. 04AP–883 – 04AP-892, 2005–Ohio–5163, ¶ 53.

{¶ 31} We conclude that this same analysis applies to R.C. 2151.414(E). Thus, in the absence of a proper request for findings of fact and conclusions of law, a trial court need not specifically set forth its findings regarding the R.C. 2151.414(E) factors. *See In re Burton*, 3rd Dist. Mercer No. 10-04-01, 2004-Ohio-4021, ¶¶ 22-23.  Consequently, because appellant did not request findings of fact and conclusions of law, the trial court was not required to set forth a specific analysis of the R.C. 2151.414(E) factors.

{¶ 32} Furthermore, in the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10, citing *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.,* 62 Ohio App.3d 657, 577 N.E.2d 383 (12th Dist.1989); *accord Yocum v. Means,* 2nd Dist. Darke No. 1576, 2002–Ohio–3803, ¶ 7 ("The lack of findings obviously circumscribes our review * * *.").  As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

> [W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate

conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence. The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

{¶ 33} In the case at bar, the trial court did set forth some facts regarding the R.C. 2151.414(E) factors; but the court did not correlate its factual findings to the statutory factors—and because appellant did not request findings of fact and conclusions of law, the trial court was not obligated to do so. Without knowing how the trial court applied the facts to the R.C. 2151.414(E) factors, our review is circumscribed, and we must affirm the trial court's decision if there is some evidence to uphold it. We thus review appellant's assignment of error with these considerations in mind.

{¶ 34} Appellant first asserts that the evidence fails to support the trial court's R.C. 2151.414(E)(1) finding that she continuously and repeatedly failed to substantially remedy the conditions causing the children's removal. Appellant notes that she has been incarcerated almost continuously since the children's removal and that "[o]ptions for her to engage in drug counseling or treatment are extremely limited in that setting."

{¶ 35} According to the complaint, the children were removed from appellant's home upon appellant's arrest for drug-related charges. ACCS developed a case plan that required appellant to obtain substance abuse treatment. ACCS presented evidence that from the time the children were removed from the home through the week before the

permanent custody hearing, appellant refused to recognize that she had a substance abuse problem and that she required any counseling or treatment. The evidence shows that appellant did not engage in any substance abuse counseling or treatment program until February 2015, which was more than one year after the children were removed from the home and only a week before the permanent custody hearing. Although appellant was incarcerated, the evidence permits a reasonable inference that substance abuse treatment programs were available to her, as documented by her enrollment in Narcotics Anonymous in February 2015 while incarcerated. Thus, despite her incarceration, appellant had options available. However, appellant did not avail herself of any substance abuse treatment program until the week before the permanent custody hearing. Moreover, the evidence shows that appellant repeatedly denied that she had a substance abuse problem that she needed to address. Under these circumstances, we believe that the evidence permits a finding that appellant repeatedly and continuously failed to substantially remedy her substance abuse issue, which was one of the conditions that caused the children's removal.[1] Consequently, we disagree with appellant that the evidence fails to support the trial court's R.C. 2151.414(E)(1) finding.

{¶ 36} With respect to the trial court's R.C. 2151.414(E)(4) finding, appellant contends that she was willing to visit and communicate with the children but became unable to do so when ACCS determined that the prison visits were detrimental to the children. However, appellant does not recognize the alternative finding permissible under this statute, which states: "The parent has demonstrated a lack of commitment toward the

---

[1] R.C. 2151.414(E)(1) may not always be an appropriate finding in a case in which the parent is incarcerated, especially when the evidence shows that the parent does not have any opportunity to remedy the conditions that led to the child's removal. In this case, however, appellant did have an opportunity to remedy at least one of the conditions that led to the children's removal.

child * * * by * * * showing an unwillingness to provide an adequate permanent home for the child[.]" Appellant has not argued that the evidence fails to support a finding that her actions displayed an unwillingness to provide an adequate permanent home for the child. Thus, even if we agree with appellant that the evidence fails to show that she demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able, appellant does not challenge the alternative finding permissible under the statute.

{¶ 37} We further note that the evidence permits a finding that appellant displayed an unwillingness to provide the children with an adequate permanent home through her unwillingness to appropriately recognize and obtain treatment for her substance abuse issues. Even though appellant enrolled in a treatment program the week before the permanent custody hearing, the trial court may have found her effort insincere. The court could have determined that appellant's enrollment in a treatment program the week before the permanent custody hearing displayed a cavalier attitude and did not show that she had a willingness to provide the children with an adequate permanent home. *See In re T.B.*, 4th Dist. Athens No. 10CA4, 2010-Ohio-2047, ¶ 33 (stating that "[a]ppellant's unwillingness to provide an adequate permanent home for the child is demonstrated through her inaction in obtaining the recommended counseling and in finding a source of income to be able to afford adequate housing, food, and clothing for the child"); *In re J.C.*, 4th Dist. Adams No. 07CA834, 2007-Ohio-3783, ¶ 24 (noting that "parents' refusal to correct their drug addiction problems led to their inability to provide an adequate home for the children, which in turn demonstrated an unwillingness to provide an adequate home for the children"); *In re Pettiford*, *supra*, at ¶¶ 51 - 56 (noting

that mother's "half-hearted" attempt to comply with case plan and lack of motivation displayed "an unwillingness or lack of commitment to providing an adequate home for her children"). *Accord In re J.L.*, 8th Dist. Cuyahoga Nos. 85668, 85669, and 85670, 2005-Ohio-6125, ¶¶ 25-28 (concluding that father's failure to comply with case plan requirements demonstrated that he was unwilling to provide child with adequate permanent home). Additionally, we recognize that the trial court was in a much better position than this court to evaluate appellant's sincerity and whether she truly realized the nature of her substance abuse problem. As a reviewing court, we are not well-suited to assess appellant's attitude and whether she was willing to remedy her substance abuse problems. We thus defer to the trial court on this matter.

{¶ 38} Although we sympathize with appellant's plight, the trial court apparently did not believe that appellant had a willingness to address her substance abuse problem and thus displayed an unwillingness to provide the children with an adequate permanent home. The trial court could have determined that appellant's repeated refusal to engage in a substance abuse program while incarcerated and her denial of responsibility for her criminal actions foreshadowed a future unwillingness to provide the children with an adequate permanent home, *i.e.*, one free from illegal drug activity. As we have recognized time and again, a trial court is not required to experiment with a child's welfare in order to permit a parent to prove his or her suitability:

> " ' * * * [A] child should not have to endure the inevitable to its great
> detriment and harm in order to give the * * * [parent] an opportunity to
> prove her suitability. To anticipate the future, however, is at most, a
> difficult basis for a judicial determination. The child's present condition

and environment is the subject for decision not the expected or anticipated

behavior of unsuitability or unfitness of the * * * [parent]. * * * The law

does not require the court to experiment with the child's welfare to see if

he will suffer great detriment or harm.' "

*In re A.C.H.,* 4th Dist. Gallia No. 11CA2, 2011–Ohio–5595, ¶ 42, quoting *In re Bishop,*

36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987), quoting *In re East,* 32 Ohio

Misc. 65, 69, 288 N.E.2d 343 (1972).

{¶ 39} Appellant expects that upon her release from prison in February 2016, she

will be able to care properly for her children. Obviously, however, appellant will need to

demonstrate that she is free of substance abuse issues and will need to obtain adequate

housing before the children can be placed with her. The trial court was not required to

keep the children in limbo or to experiment with their welfare in order to see whether

appellant would refrain from illegal drug activity so that she could adequately provide for

the children upon her release from prison. We note that at the time of the permanent

custody hearing, appellant had approximately one year in prison remaining. After her

release, appellant presumably would need several months to prove that she will remain

drug-free so that she can adequately care for the children. We cannot fault the trial court

for deciding not to experiment with the children's welfare by continuing them in

appellee's temporary custody indefinitely when appellant has already demonstrated an

unwillingness to address her substance abuse issues. The trial court could have

determined that the possibility that appellant would remain drug-free upon her release

was too remote, given her past actions. Therefore, we do not believe that the trial court

was required to continue the children in the temporary custody of ACCS indefinitely in

order to see whether appellant's conduct upon her release from prison shows that she is

fully committed to providing the children with an adequate permanent home. *See In re*

*M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 33; *In re J.V–M.P.,* 4th Dist.

Washington No. 13CA37, 2014–Ohio–486, ¶ 26.

{¶ 40} Appellant next contends that the evidence does not support the trial court's

R.C. 2151.414(E)(12) finding. She asserts that R.C. 2151.414(E)(12) allows a trial court

to find that a child cannot be placed with a parent or should not be placed with a parent

only if the parent will be incarcerated for eighteen months after the filing of the

permanent custody motion or the date of the dispositional hearing. Appellant claims that

she will be released on February 2, 2016, and notes that appellee filed its permanent

custody motion on October 29, 2014—a period less than eighteen months. She argues

that R.C. 2151.414(E)(12) does not apply.

{¶ 41} We observe that courts have not uniformly determined whether the

eighteen-month period specified in R.C. 2151.414(E)(12) means that the parent must

have at least eighteen-months of incarceration remaining at the time the permanent

custody motion is filed or the dispositional hearing is held, or whether the eighteen-

month period includes the time following a parent's release from incarceration. *In re*

*J.H.*, 5th Dist. Guernsey No. 10CA43, 2011-Ohio-1077, ¶ 27 (stating that trial court

should examine prison sentence and "consider whether it is likely that one or both of the

parents will not be available to provide care for the child for at least eighteen months");

*In re V. S.*, 9th Dist. Lorain No. 03CA8273, 2003-Ohio-5612, ¶¶ 6-7 (stating that "R.C.

2151.414(E)(12) is satisfied if the parent was incarcerated either at the time that the

motion for permanent custody was filed or the date of the dispositional hearing and will

continue to be incarcerated or otherwise will be unavailable to care for the child for at least eighteen months from that date"); *In re Rucker*, 12th Dist. Butler No. CA2002-05-126, 2002-Ohio-6878, ¶ 22 (upholding trial court's R.C. 2151.414(E)(12) finding when evidence showed that appellant would be incarcerated for approximately one year, and, following her incarceration, she would need to maintain sobriety for at least one year before the court would consider reunification); *In re French*, 9th Dist. Wayne No. 00CA0076, 2001 WL 81254, * 7 (Jan. 31, 2001) (determining that time following parent's incarceration included within the eighteen-month period); *In re Marrs*, 2nd Dist. Clark No. 97–CA–79, 97-CA-80, 1998 WL 896669, * 5 (Dec. 28, 1998) (concluding that "if a parent is unavailable because of imprisonment either eighteen months from the date of the initial filing or eighteen months from the date of the dispositional hearing, that parent is not fit for placement within a reasonable time under R.C. 2151.414(E)"). Because we determined that the evidence supports the trial court's R.C. 2151.414(E)(1) and (4) findings, we do not find it necessary to resolve this question at this time.

{¶ 42} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

Harsha, J., concurring:

{¶ 43} As the principle opinion notes, we have recently refined our standard of review in permanent custody cases to reflect the heightened burden of proof at the trial court level and the pronouncements in *Eastly*, *supra*, about a manifest weight of the evidence review. Thus, we have construed the "some evidence" edict in this context to mean "enough to satisfy the clear and convincing standard in the mind of a reasonable

fact finder * * *." *See*, *In re: B.C. 1*, *supra.* I conclude our interpretation of the "some

evidence" requirement satisfies any obligation of heightened scrutiny that might exist. *Id.*

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds that reasonable grounds for this appeal exist.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, A.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment and Opinion with Opinion.

For the Court

By:

Marie Hoover
Presiding Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.