[Cite as *In re Ar.C.*, 2021-Ohio-596.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| Ar.C., Ad.C., and Au.C., | : | CASE NO. 20CA3720, 20CA3721, 20CA3722 |
| Adjudicated Dependent Children. | : | |
| | : | <u>DECISION AND JUDGMENT ENTRY</u> |

APPEARANCES:

Michael A. Davis, Waverly, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Jennifer L. Ater, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 2-26-21
Abele, J.

{¶ 1} This is an appeal from a Ross County Common Pleas Court, Juvenile Division, judgment that granted South Central Ohio Job and Family Services Division, Children's Division, appellee herein, permanent custody of six-year-old Ar.C., four-year-old Ad.C., and three-year-old Au.C. K.C., the children's biological mother and appellant herein, raises the following assignment of error for review:

> "THE TRIAL COURT'S DECISION TO AWARD PERMANENT
> CUSTODY OF AR.C., AD.C., AND AU.C. TO THE SOUTH
> CENTRAL OHIO JOB AND FAMILY SERVICES CHILDREN'S
> DIVISION WAS AGAINST THE MANIFEST WEIGHT AND
> SUFFICIENCY OF THE EVIDENCE."[1]

---

[1] Appellant's brief does not appear to include a table of contents or a table of cases. Moreover, it does not designate an "assignment of error." Rule 16 of the Ohio Rules of Appellate Procedure requires an appellant's brief to include a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(3). The rule also requires other elements missing from appellant's brief: (1) a table of contents, with page references, App.R. 16(A)(1); and (2) a table of cases, App.R. 16(A)(2).

App.R. 12 provides that a court of appeals may "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2).

We prefer, however, to decide cases on their merits rather than on procedural technicalities. *Barksdale v. Van's Auto Sales, Inc.*, 38 Ohio St.3d 127, 128, 527 N.E.2d 284, 285 (1988) (noting that a "basic tenet of Ohio

{¶ 2} On June 22, 2017, appellee filed complaints that alleged the three children are dependent children and requested temporary custody. The statement of facts attached to the complaints alleged that on June 8, 2017, appellant gave birth to Au.C. and that appellant had a positive drug screen for marijuana. Additionally, the newborn tested positive for oxycodone and marijuana.

{¶ 3} On June 29, 2017, appellee asked the court to place the children in the paternal grandmother's temporary custody. The next day, the trial court granted the paternal grandmother temporary custody.

{¶ 4} The trial court later adjudicated the children dependent and continued appellee's temporary custody, but the children continued to reside with the paternal grandmother.[2] On March 5, 2018, the court entered a dispositional order that placed the children in appellee's temporary custody.

{¶ 5} Appellee soon developed case plans that appellant would need to undertake to eliminate the various dangers to the children: (1) complete a mental health evaluation; (2) review information available on The National Domestic Violence Hotline website and implement the techniques; (3) complete parenting classes and follow recommendations; (4) provide a stable home environment free of violence, drug use, or drug activity; (5) submit to random drug

---

jurisprudence [is] that cases should be determined on their merits and not on mere procedural technicalities"). Thus, even though appellant's brief does not specifically identify an assignment of error, we construe the main heading of appellant's brief as her assignment of error.

[2] Appellee asserts in its brief that the children lived with the paternal grandmother from June 30, 2017, through March 5, 2018. The record also contains a June 30, 2017 entry to show that the court placed the children in the paternal grandmother's temporary custody. None of the entries, however specifically indicate when the children were removed from the paternal grandmother's home and placed in foster homes. Instead, all of the subsequent dispositional entries refer to the children in appellee's temporary custody.

screens; (6) refrain from criminal or violent activities; (7) comply with any pending case or probation; (8) refrain from illegal substance abuse; (9) submit to an alcohol and drug assessment; (10) regularly attend visitation with the children; and (11) complete an assessment with Integrated Services.

{¶ 6} Subsequently, appellee requested permanent custody of the children and asserted that the children have been in its temporary custody for more than twelve months out of a consecutive twenty-two month period. Appellee also claimed that appellant had not completed any case plan goals and the children could not be placed with her within a reasonable time, or should not be placed with her. Appellee additionally argued that placing the children in its temporary custody would be in their best interests.

{¶ 7} On January 30 and June 22, 2020, the trial court held a hearing to consider appellee's permanent custody motions. Dr. Bryan Bethel, Ar.C.'s counselor, testified that he diagnosed Ar.C. with "adjustment disorder with anxiety * * * and a rule-out of post-traumatic stress disorder." Dr. Bethel stated that a "rule-out" diagnosis means that "an individual * * * is exhibiting diagnostic criterion consistent with a particular disorder" but that insufficient information exists to either rule it in or rule it out. Dr. Bethel explained that Ar.C.'s current treatment involves out-patient counseling to increase adaptive coping strategies, to promote emotional regulation, and to assist with transition to foster care.

{¶ 8} Dr. Bethel indicated that the child also receives "trauma-based intervention due to aversive experiences." The doctor stated that Ar.C. "reported exposure to intimate partner violence or domestic violence at a young age." Dr. Bethel testified that continuing counseling with Ar.C. is "paramount." The foster mother has been bringing Ar.C. to counseling sessions

and that "it appears that [the child] has a very strong attachment to his foster mother."   Dr. Bethel explained that the child had displayed "difficulty separating from [the] foster mother" and that the foster mother reported that the child had "significant anxiety responses at the child's school when she separated."

{¶ 9} Julie Piatt, Ad.C.'s counselor, testified that she diagnosed the child with post-traumatic stress disorder.   The child has behavioral issues such as hitting, throwing, being harmful to pets, and otherwise being physically aggressive.   The child also informed Piatt that appellant used to hit the child and showed the child her "private parts."   Piatt explained that "trauma treatment" would be beneficial for the child, but that at present, Piatt simply is working to stabilize the child's behaviors and to help the child learn to regulate her emotions.   Piatt stated that the child's visits with the appellant cause distress and that the child stated that she does not want to visit appellant.   Piatt related that, until the child's visits with appellant stop, Piatt cannot progress beyond stabilizing the child.

{¶ 10} The trial court continued the hearing to June 22, 2020.   At the hearing, the foster mother testified that Ar.C. was placed in her home in August 2019, and that Au.C. was placed in the home in February 2020.   The foster mother further stated that the children have not visited appellant since COVID restrictions took effect.   The foster mother related that the children are bonded with her and that she is willing to adopt the children.

{¶ 11} Caseworker Crystal Puckett testified that initially the agency removed the children from appellant's custody due to concerns about drugs.   She stated that Au.C. tested positive for opiates at birth.   Puckett explained that appellee's case plan required appellant to obtain stable housing, to receive alcohol and drug counseling, to take parenting classes, to take drug screens,

and to visit the children. Puckett stated that although appellant's housing appeared "fine," appellant did not engage in any alcohol and drug treatment programs. Puckett testified that appellant failed to remedy the concerns that led appellee to remove the children from her care and that the children should not be placed with appellant.

{¶ 12} Caseworker Pam Lowery stated that she started to work with the family in May 2019. At the time, appellant's visits with the children had occurred at Integrated Services, but in September 2019 Integrated Services terminated visits because appellant "had too many no calls[,] no shows and was late too many times."

{¶ 13} Lowery testified that after Integrated Services terminated the visitations, Lowery attempted to contact appellant, but she had difficulty reaching appellant. Lowery eventually made contact with appellant and arranged for weekly visits starting in November 2019 and appellant consistently visited the children between November 2019 and early March 2020, but was late a couple of times. Lowery indicated that appellant's visits ended in March 2020, following appellant's arrest, when appellant spent sixty days in jail and did not visit the children during that time. Lowery stated that on May 18, 2020, appellant notified Lowery that appellant had been released from jail and asked Lowery "what [appellant] needed to do." Lowery explained that she had trouble reaching appellant, but they spoke on May 27, 2020 and discussed a visitation via Zoom. Lowery asked appellant to download Zoom to appellant's phone and then contact Lowery once appellant had set up her Zoom account, but appellant did not respond to Lowery. Thus, Lowery was unable to arrange additional visits.

{¶ 14} Caseworker Lowery also explained that appellant had been engaged at services with Prism, but the services ended when appellant went to jail. Later, appellant was discharged

from Prism for noncompliance. Lowery indicated that appellant previously attempted to engage in Prism services during January 2018, but that she also was terminated for noncompliance. Between October 2019 and March 2020, Lowery asked appellant to complete approximately thirteen random drug screens, with five positive for illegal substances: cocaine, heroin, fetanyl, and marijuana. Lowery explained that she has since been to appellant's home at least five times and called appellant numerous times, but has been unsuccessful in contacting appellant. Lowery also related that in June 2020, appellant promised to call Lowery, but appellant did not call.

{¶ 15} Caseworker Lowery testified that, although appellant attempted to complete portions of the case plan goals, she did not complete all of the goals necessary to allow the children to safely return to her custody. Lowery indicated that appellant had three years to fulfill the case plan goals, but had not successfully completed alcohol and drug treatment or successfully engaged in mental health counseling. Appellant did not begin to show any interest with the case plan until October 2019, more than two years after the dependency complaints. Lowery also testified that the children are doing well in their current placements. Ad.C is placed in a therapeutic foster home and the other two children live in the same foster home. Lowery stated that the children need permanency and that appellant has not remedied the conditions that led to the children's removal.

{¶ 16} On June 25, 2020, the trial court (1) awarded appellee permanent custody of the three children; (2) found that the children cannot be placed with either parent or should not be placed with either parent within a reasonable amount of time; and (3)determined that placing the children in appellee's permanent custody is in their best interests.

{¶ 17} The trial court found that appellant failed to maintain sobriety and continued to

test positive for illegal substances through March 2020. The court also noted that appellant failed to successfully complete "any AOD treatment" and that she did not submit to mandatory testing after her May 2020 release from jail. The court additionally found that appellant did not maintain adequate contact with the children and that the supervised visits were terminated due to appellant's inconsistent attendance. The court also found that the children have been in appellee's temporary custody since March 5, 2018.

{¶ 18} The trial court further determined that the children "are somewhat bonded" with appellant, but appellant failed to maintain consistent contact. The court noted that the children also have a strong bond with the foster parents. The two oldest children prefer the court grant appellee permanent custody, and the guardian ad litem also recommended the court grant appellee permanent custody of the children. The court additionally concluded that the children need a legally secure permanent placement and that no motions for legal custody had been filed.

{¶ 19} Thus, the court granted appellee permanent custody of the children. This appeal followed.

{¶ 20} In her sole assignment of error, appellant asserts that the trial court's decision to grant appellee permanent custody of the children is against the manifest weight of the evidence. In particular, appellant argues that the evidence fails to support the trial court's finding that the children cannot be placed with her within a reasonable time, or that the children should not be placed with her. Appellant asserts that she complied with the case plan requirement to obtain stable housing and that she has completed a parenting course.

{¶ 21} Appellant also contends that the record does not contain clear and convincing evidence to support the court's finding that the children's placement in appellee's permanent

custody is in their best interests. Specifically, appellant alleges that the evidence does not support the trial court's conclusion that the children cannot achieve a legally secure permanent placement without the grant of permanent custody. Appellant claims that the children could have been placed with their maternal grandmother and that the children could achieve a legally secure permanent placement without awarding appellee permanent custody.

A

{¶ 22} Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re B.E.*, 4th Dist. Highland No. 13CA26, 2014–Ohio–3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶ 29.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶ 23} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" *Eastley*

at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord In re Pittman*, 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶ 23–24. We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian*, 4th Dist. No. 04CA 10, 2004–Ohio–3146, ¶ 7.

{¶ 24} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986). In determining

whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of Lay*, 25 Ohio St.3d 41, 42–43, 495 N.E.2d 9 (1986). *Cf. In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").

{¶ 25} Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013–Ohio–3588, ¶ 62; *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and 2012CA33, 2012–Ohio–6049, ¶ 17, quoting *In re A.U.*, 2nd Dist. Montgomery No. 22287, 2008–Ohio–187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.'").

{¶ 26} Once a reviewing court finishes its examination, the judgment may be reversed

only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins*, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175; *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## B

{¶ 27} We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.'" *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (stating that "natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); Murray, 52 Ohio St.3d at 157, 556 N.E.2d 1169.

{¶ 28} A parent's rights, however, are not absolute. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Rather, "'it is plain that the natural rights of a parent

* * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).   Thus, the State may terminate parental rights when a child's best interest demands such termination.   *D.A.* at ¶ 11.

{¶ 29} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing.   The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency.   *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, ¶ 29, quoting R.C. 2151.01(A).

C

{¶ 30} A children services agency may obtain permanent custody of a child by (1) requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353, or (2) filing a motion under R.C. 2151.413 after obtaining temporary custody.   In this case, appellee sought permanent custody of the child by filing a motion under R.C. 2151.413.   When an agency files a permanent custody motion under R.C. 2151.413, R.C. 2151.414 applies.   R.C. 2151.414(A).

{¶ 31} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the

following conditions applies:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 32} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

D

{¶ 33} In the case sub judice, appellant challenges the court's finding under R.C. 2151.414(B)(1)(a) that the children cannot be placed with her within a reasonable time or should not be placed with her.[3]   Appellant contends that she has a stable home where the children can live and that she complied with the case plan requirement to complete parenting classes.

{¶ 34} Appellee claims that appellant did not remedy the conditions that led to the

---

[3] The evidence also supports a finding under R.C. 2151.414(B)(1)(d).   The trial court did not, however, explicitly cite this provision, or incorporate its language in its decision.   Therefore, we do not address it.

children's removal from appellant's custody. Appellee contends that appellant did not complete any alcohol and drug counseling services and continued to test positive for illegal substances throughout the time that the children were in appellee's temporary custody. Appellee additionally argues that appellant did not consistently engage in mental health counseling, did not maintain regular contact with the caseworkers, and did not maintain regular contact with the children. Appellee thus contends that the trial court's R.C. 2151.414(B)(1)(a) finding is not against the manifest weight of the evidence.

{¶ 35} R.C. 2151.414(E) requires a court that is determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents to consider all relevant evidence. The statute further specifies that if one or more of the following conditions exist "as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:"

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
> * * * *

{¶ 36} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E)(1) factors. The existence of one factor alone will support a finding that the child cannot be placed

with either parent within a reasonable time or should not be placed with either parent. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50; *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996); *e.g., In re L.R.B.*, 2nd Dist. Montgomery No. 28826, 2020-Ohio-6642, 2020 WL 7310982, ¶ 52; *In re Hurlow*, 4th Dist. Gallia No. 98CA6 (Sept. 21, 1998).

{¶ 37} In the case at bar, we note that the trial court did not specifically cite which R.C. 2151.414(E) factor applies.   Moreover, in the absence of a timely request for findings of fact and conclusions of law, the court had no obligation to do so.

{¶ 38} Civ.R. 52 states: "When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." Additionally, R.C. 2151.414(C) states:  "If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."   Generally, the failure to request findings of fact and conclusions of law will result in a waiver of the right to challenge a trial court's finding concerning an issue.  *In re Barnhart*, 4th Dist. Athens No. 02CA20, 2002–Ohio–6023, ¶ 23, citing *Pawlus v. Bartrug*, 109 Ohio App.3d 796, 801, 673 N.E.2d 188 (9th Dist.1996), and *Wangugi v. Wangugi*, 4th Dist. Ross No. 99CA2531, 2000 WL 377971 (Apr. 12, 2000).   "'[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts.'"  *Id.*, quoting *Fallang v. Fallang*, 109 Ohio App.3d 543, 549, 672 N.E.2d 730 (12th Dist.1996).   We

have applied this rule to R.C. 2151.414 permanent custody cases and have stated that, unless a party requests findings of fact and conclusions of law, a trial court need not set forth specific factual findings regarding each R.C. 2151.414(D) best interest factor. *In re M.M.*, 4th Dist. Scioto No. 07CA3203, 2008–Ohio–2007, ¶ 20; *In re Pettiford*, 4th Dist. Ross No. 06CA2883, 2006–Ohio–3647, ¶ 28; *In re Myers*, 4th Dist. Athens No. 02CA50, 2003–Ohio–2776, ¶ 23, citing *In re Malone*, 4th Dist. Scioto No. 93CA2165, 1994 WL 220434 (May 11, 1994); *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, fn. 3 (Aug. 9, 2001), quoting *In re Day*, 10th Dist. Franklin No. 00AP–1191, 2001 WL 125180 (Feb. 15, 2001); *accord In re R.H.*, 5th Dist. Perry No. 10CA9, 2010–Ohio–3293, ¶ 14. If, however, a party requests findings of fact and conclusions of law, then the trial court must set forth specific factual findings that correlate to each best interest factor. *Myers* at ¶ 23. Additionally, the record must indicate that the trial court indeed considered the proper statutory factors. *In re Allbery*, 4th Dist. Hocking No. 05CA12, 2005–Ohio–6529, ¶ 13; *In re C.C.*, 10th Dist. Franklin No. 04AP–883–04AP–892, 2005–Ohio–5163, ¶ 53.

{¶ 39} We previously determined that this same analysis applies to R.C. 2151.414(E). *In re C.S.*, 4th Dist. Athens No. 15CA18, 2015-Ohio-4883, 2015 WL 7569022, ¶ 31. Thus, in the absence of a proper request for findings of fact and conclusions of law, a trial court need not specifically set forth its findings regarding the R.C. 2151.414(E) factors. *Id.*, citing *In re Burton*, 3rd Dist. Mercer No. 10–04–01, 2004–Ohio–4021, ¶¶ 22–23. Consequently, in the case sub judice because appellant did not request findings of fact and conclusions of law, the trial court was not required to set forth a specific analysis of the R.C. 2151.414(E) factors. Furthermore, in the absence of findings of fact and conclusions of law, we generally must

presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *Bugg* v. Fancher, 4th Dist. Highland No. 06CA12, 2007–Ohio–2019, ¶ 10, citing *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.*, 62 Ohio App.3d 657, 577 N.E.2d 383 (12th Dist.1989); *accord Yocum v. Means*, 2nd Dist. Darke No. 1576, 2002–Ohio–3803, ¶ 7 ("The lack of findings obviously circumscribes our review * * *."). As the court explained in *Pettet v. Pettet*, 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

> [W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence. The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

{¶ 40} In the case at bar, it appears that the trial court did set forth some facts regarding the R.C. 2151.414(E) factors, but did not correlate its factual findings to the statutory factors. Appellant, however, did not request findings of fact and conclusions of law. Therefore, the trial court was not obligated to enter findings of fact and conclusions of law. Furthermore, without knowing how the trial court applied the facts to the R.C. 2151.414(E) factors, our review is circumscribed. Thus, we must affirm the trial court's decision if some evidence exists to support it.

{¶ 41} The language of the court's decision indicates that the court determined that R.C. 2151.414(E)(1) applies. The court found that appellant failed to maintain sobriety, failed to consistently submit to random drug screens, failed to complete alcohol and drug treatment, and

continued to test positive for illegal substances through March 2020. The court's findings suggest that the court determined that R.C. 2151.414(E)(1) applies, in that appellant failed to continuously and repeatedly  substantially remedy the conditions that caused the children to be removed from appellant's custody.

{¶ 42} After our review, we agree with the trial court that the record contains clear and convincing evidence to support the court's findings. Appellant did not argue that she has maintained sobriety, consistently submitted to random drug screens, completed alcohol and drug treatment, and tested negative for illegal substance throughout the case.

{¶ 43} Unfortunately, appellant fails to recognize that she did not substantially remedy the conditions that led to the children's removal from her care. Instead, appellant contends that she complied with some of the case plan goals. Appellant appears to assert that compliance with a portion of case plan goals shows that she has substantially remedied the conditions that led to the children's removal, and that the children can be placed with her within a reasonable time. We note, however, that a parent's "substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous." *In re A.C–B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017–Ohio–374, 2017 WL 440116, ¶ 11, citing *In re M.Z.*, 9th Dist. No. 11CA010104, 2012–Ohio–3194, ¶ 19; *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015–Ohio–2280, ¶ 40 ("Compliance with a case plan is not, in and of itself, dispositive of the issue of reunification."); *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014–Ohio–5841, ¶ 46 ("Substantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody to a children's services agency."). Simply because a parent completes some or all of the terms of a case plan does not

mean the parent has achieved the goals of the plan, or has substantially remedied the conditions that caused the child to be removed. *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, 2013 WL 1799849, ¶ 90. "'The issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal.'" *Id.*, quoting *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285, 4, 1995 Ohio App. LEXIS 4618, 11 (Oct. 18, 1995).

{¶ 44} In the case sub judice, assuming, arguendo, that appellant has complied with the case plan goals to obtain stable housing and to complete parenting classes, appellant's partial compliance does not establish that she has fulfilled the ultimate case plan goal to establish a safe environment free from alcohol and drug abuse.

{¶ 45} Consequently, we do not agree with appellant that the trial court's R.C. 2151.414(B)(1)(a) finding that the children cannot be placed with appellant within a reasonable time, or should not be placed with appellant, is against the manifest weight of the evidence.

E

{¶ 46} Appellant also asserts that the trial court's best-interest determination is against the manifest weight of the evidence. In particular, appellant argues that the evidence adduced at the hearing fails to support the trial court's finding that the children cannot achieve a legally secure permanent placement without placing the children in appellee's permanent custody because the children's maternal grandmother can provide the children with a legally secure permanent placement. Appellant thus argues that the trial court failed to properly evaluate this factor when determining the children's best interests.

{¶ 47} R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as

specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody. The listed factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶ 48} The determination of whether a grant of permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and 24099, 2008–Ohio–3773, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP–590 and 07AP–591, 2008–Ohio–297, 2008 WL 224356, ¶ 19. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 3rd Dist. Marion Nos. 9–15–37, 9–15–38, and 9–15–39, 2017–Ohio–142, 2017 WL 168864, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014–Ohio–4918, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19,

2016–Ohio–916, 2016 WL 915012, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶ **49**} In the case sub judice, we first note that appellant does not directly address each best interest factor and discuss why they weigh in favor of the denial of appellee's request for permanent custody of the child. Instead, she limits her argument to the trial court's finding regarding the children's need for a legally secure permanent placement.

{¶ **50**} "Although the Ohio Revised Code does not define the term, 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016–Ohio–793, 2016 WL 818754, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, *9 (Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP–64 and 15AP–66, 2015–Ohio–4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012–L–126, 2013–Ohio–1293, ¶ 95 (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 171 Ohio App.3d 248, 2007–Ohio–2007, 870 N.E.2d 245, ¶ 34 (10th Dist.) (Sadler, J., dissenting) (stating that a legally secure permanent placement means "a placement that is stable and consistent"); Black's Law Dictionary 1354 (6th Ed. 1990) (defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *id.* at 1139 (defining "permanent" to mean, in part, "[c]ontinuing or

enduring in the same state, status, place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient"). Thus, "[a] legally secure permanent placement is more than a house with four walls.   Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs."   *M.B.* at ¶ 56.

{¶ 51} We also observe that a trial court that is evaluating a child's need for a legally secure permanent placement, and whether the child can achieve that type of placement, need not determine that terminating parental rights is "not only a necessary option, but also the only option."   *Schaefer, supra*, at ¶ 64.   Rather, once a court finds the existence of any one of the R.C. 2151.414(B)(1)(a)-(e) factors, R.C. 2151.414(D)(1) requires the court to weigh "all the relevant factors * * * to find the best option for the child."   *Id.*   "The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor.   The statute does not even require the court to weigh that factor more heavily than other factors."   *Id.*   Instead, a child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security.   *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).   Thus, courts are not required to favor relative placement if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody.   *Schaefer* at ¶ 64; *accord In re T.G.*, 4th Dist. Athens No. 15CA24, 2015–Ohio–5330, ¶ 24; *In re V.C.*, 8th Dist. Cuyahoga No. 102903, 2015–Ohio–4991, ¶ 61 (stating that relative's positive relationship with child and willingness to provide an appropriate home did not trump child's best interest).

{¶ 52} After our review in the case sub judice, we do not believe that the trial court's

finding that the children cannot achieve a legally secure permanent placement without placing them in appellee's permanent custody is against the manifest weight of the evidence. The evidence shows that appellant did not complete all of the case plan goals and that she cannot provide the children with a legally secure permanent placement. Appellant did not successfully complete an alcohol and drug treatment program, despite having nearly three years to complete this case plan goal. Appellant also continued to test positive for illegal substances, even after appellee filed its permanent custody motion and after the trial court held the first permanent custody hearing in January 2020.

{¶ 53} Although appellant alleges that her mother, the children's maternal grandmother, can provide the children with a legally secure permanent placement, appellee does not agree. Appellee decided not to attempt to place the children with the maternal grandmother after verifying with the grandmother's doctor that the grandmother had health issues that prevents her from appropriately caring for the children.

{¶ 54} We also note that appellant challenges the credibility of the caseworker's testimony regarding the maternal grandmother's health. The caseworker indicated that the maternal grandmother's doctor had given appellee a note that stated that the maternal grandmother has health issues that prevent her from caring for the children. Appellant contends that appellee excluded the maternal grandmother as a possible placement based upon an unproven health condition. Appellant recognizes that appellee relied upon a "doctor's note," but asserts that appellee did not submit the note into evidence and did not explain why the maternal grandmother's health prevents her from caring for the children.

{¶ 55} We observe that the credibility of the caseworker's testimony is a matter for the

trial court to resolve. Moreover, the trial court judge questioned the caseworker about the maternal grandmother's availability as a possible placement. The judge confirmed that appellee excluded the maternal grandmother as a possible placement due to health concerns. Additionally, appellant's trial counsel cross-examined the caseworker about the maternal grandmother's health and the whereabouts of the doctor's note that appellee received. The trial court was entitled to weigh the evidence and to find the caseworker's testimony credible. We, therefore, do not agree with appellant that the trial court should have concluded that the maternal grandmother is free from health concerns and that she can provide the children with a legally secure permanent placement.

{¶ 56} We further observe that a trial court is not required to place the children with a relative if the totality of the best-interest factors favor placing the children in appellee's permanent custody. *Schaefer* at ¶ 64. In the case at bar, the totality of the evidence regarding the children's best interests supports the trial court's decision to place the children in appellee's permanent custody.

{¶ 57} With respect to the children's interactions and interrelationships, the evidence shows that the children are doing reasonably well and making progress in their foster homes. The two older children receive counseling due to psychological trauma that occurred when they lived with appellant. Ad.C.'s counselor reported that the child needs to stabilize before the child can move forward with the next treatment phase, and that moving forward is not possible unless the child stops seeing appellant. Ar.C.'s counselor also stated that the child has separation anxiety when leaving the foster mother. Ad.C's and Ar.C.'s fragile emotional states resulted from living with appellant. Thus, we believe that the evidence does not suggest that the children

share a positive relationship with appellant, or that they had previously experienced positive interactions with appellant.  We note, however, that appellee did not express any significant concerns about appellant's interaction with the children during supervised visits.

{¶ 58} Additionally, the two older children stated that they do not want to live with appellant.  The guardian ad litem recommended that the court grant appellee permanent custody of the children.

{¶ 59} Regarding the children's custodial history, the three children were removed from appellant's custody in June 2017, and have been in appellee's temporary custody since that time. While in appellee's temporary custody, the children lived with the paternal grandmother from late June 2017 through early March 2018.  Since, March 2018, the children have lived in foster homes.

{¶ 60} After our review and based upon all of the foregoing circumstances, we cannot conclude that the trial court's best-interest determination is against the manifest weight of the evidence.   Moreover, as this court often notes:

> "* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination.  The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * *   The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."

In re W.C.J., 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 48, quoting In re Bishop, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987).

{¶ 61} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.